UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CYNTHIA A. SIMPSON,                                    Case No. 1:13-cv-640
        Plaintiff,
                                                       Litkovitz, M.J.
        vs.

COMMISSIONER OF                                        **OPINION AND ORDER**
SOCIAL SECURITY,
        Defendant.

Plaintiff Cynthia A. Simpson brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10) and

the Commissioner's response in opposition (Doc. 11).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in August 2009, alleging disability since June

30, 2005 due to fibromyalgia, restless leg syndrome, Raynaud's,[1] chronic obstructive pulmonary

disease (COPD), depression, anxiety, chronic back pain, pelvic pain, memory lapses, paranoia

and phobias, mental and emotional abuse, and sleep disorder. Plaintiff's applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge (ALJ) Curt Marceille. Plaintiff, plaintiff's

boyfriend, and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 4,

2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

---

[1]Reynaud's phenomenon is "a condition in which cold temperatures or strong emotions cause blood vessel spasms that block blood flow to the fingers, toes, ears, and nose." *See* http://www.nlm.nih.gov/medlineplus/ency/article/000412.htm (last visited July 11, 2014).

II. **Analysis**

    A. **Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The [plaintiff] has not engaged in substantial gainful activity since June 30, 2005, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: fibromyalgia; restless leg syndrome; Raynaud[']s; chronic obstructive pulmonary disease (COPD); degenerative disc disease (DDD); depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ determined] that the [plaintiff] has the residual functional capacity to perform light[2] work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb stairs/ramps, ladders, ropes, or scaffolds. She must avoid concentrated exposure to wetness, humidity, extreme heat or cold and pulmonary irritants. She cannot work with hazards (unprotected heights/dangerous moving machinery). She is limited to simple and detailed tasks but no fast-paced production work. She cannot engage in overhead work.

---

[2]The ALJ noted that "[l]ight work involves lifting no more than 20 pounds occasionally and 10 pounds frequently, standing and walking 6 of 8 hours, and sitting 2 of 8 hours." (Tr. 38).

3

6. The [plaintiff] is capable of performing past relevant work as a general clerk job (sic) and a switchboard operator. This work does not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 35-47).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

4

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff enumerates the following eight distinct errors in her Statement of Errors: (1) the ALJ erred in finding plaintiff did not meet or medically equal a listed impairment; (2) the ALJ erred in assessing plaintiff's residual functional capacity (RFC); (3) the ALJ erroneously discounted plaintiff's credibility; (4) the ALJ erred in weighing the medical opinions of record; (5) the ALJ erred in determining that plaintiff could perform her past relevant work; (6) the ALJ erred by not accepting the hypothetical question posed to the VE by plaintiff's counsel at the ALJ hearing; (7) the ALJ failed to consider the disabling effect of plaintiff's pain; and (8) the ALJ improperly applied the Medical-Vocational Guidelines. (Doc. 10 at 2-3).

1. <u>Whether the ALJ erred in finding plaintiff did not meet or medically equal a listed impairment</u>.

Plaintiff contends the ALJ erred in failing to find that she meets or medically equals Listings 12.04 and 12.06.

Listing 12.04 governs affective disorders, such as depressive disorders, and Listing 12.06 governs anxiety-related disorders. The required level of severity for these Listings is met when both the "paragraph A" and "paragraph B" criteria of the Listings are satisfied, or when the criteria of "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

To satisfy the "paragraph A" criteria of Listing 12.04, the mental impairment must result

5

in medically documented persistence, either continuous or intermittent, of one of the following:

> 1. Depressive syndrome characterized by at least four of the following:
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>> b. Appetite disturbance with change in weight; or
>> c. Sleep disturbance; or
>> d. Psychomotor agitation or retardation; or
>> e. Decreased energy; or
>> f. Feelings of guilt or worthlessness; or
>> g. Difficulty concentrating or thinking; or
>> h. Thoughts of suicide; or
>> i. Hallucinations, delusions, or paranoid thinking; or
> 2. Manic syndrome characterized by at least three of the following:
>> a. Hyperactivity; or
>> b. Pressure of speech; or
>> c. Flight of ideas; or
>> d. Inflated self-esteem; or
>> e. Decreased need for sleep; or
>> f. Easy distractibility; or
>> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>> h. Hallucinations, delusions, or paranoid thinking; or
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.   To satisfy the "paragraph A" criteria of Listing

12.06, there must be medically documented findings of at least one of the following:

> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>> a. Motor tension; or
>> b. Autonomic hyperactivity; or
>> c. Apprehensive expectation; or
>> d. Vigilance and scanning; or
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress . . . .

6

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

To satisfy the "paragraph B" criteria for both Listings 12.04 and 12.06, the mental

impairment must result in at least two of the following: marked restriction of activities of daily

living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended

duration.   A marked limitation means more than moderate but less than extreme.  *Id.*, § 12.00

(C).   Repeated episodes of decompensation, each of extended duration, means three episodes

within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  *Id.*, §

12.00(C)(4).[3]

The ALJ determined that plaintiff's severe mental impairments, depression and anxiety,

considered singly and in combination, do not meet or medically equal the criteria of either

Listing 12.04 or 12.06 because they do not cause at least two "marked" limitations and, thus, the

"paragraph B" criteria are not satisfied.   (Tr. 36-37).   The ALJ found that plaintiff has mild

limitations in activities of daily living; mild limitations in social functioning; and moderate

limitations in concentration, persistence, or pace; and she has experienced no episodes of

decompensation of extended duration.   (*Id.*).

Plaintiff argues that the ALJ erred by failing to find that she meets or medically equals

Listing 12.04 or 12.06 because "[t]he exhibits and testimony at the hearing establish that at the

time of the hearing [plaintiff] exhibited at least four of the criteria required by [paragraph A of

Listing] 12.04 [and] at least some of the criteria required by [paragraph A of Listing] 12.06."

(Doc. 10 at 13).   Plaintiff further argues that the mental RFC assessment form completed by her

---

[3]Plaintiff's Statement of Errors relates only to the "paragraph A" and "paragraph B" criteria of Listings
12.04 and 12.06.   Consequently, the Court declines to review the ALJ's finding that plaintiff does not meet the

social worker, Laura Osborn-Coffey, MSW, LISW-S, establishes that she meets the Listings' "paragraph B" criteria. (Doc. 10 at 13-14) (citing Tr. 420-23). Plaintiff also maintains that the ALJ improperly analyzed plaintiff's limitations in activities of daily living and social functioning as required by Listing 12.00(C).[4] (*Id*. at 14). Plaintiff concludes by asserting that even if her anxiety and depression do not meet Listing 12.04 or 12.06, "the evidence establishes that the overall affect (sic) of these impairments at least equal a listed impairment." (Doc. 10 at 15). The only evidence plaintiff cites to in support of her listings argument is the RFC assessment of counselor Osborn-Coffey and a vague reference to the ALJ hearing testimony.[5] (*Id*. at 13-15).

Plaintiff has the burden at Step Three of the sequential evaluation process to show she meets or equals a listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii). It is therefore incumbent upon plaintiff to put forth medical evidence establishing that she meets all of the requirements of Listings 12.04 and 12.06 to meet this burden. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32

---

"paragraph C" criteria of these listings.
     [4]Paragraph C of §12.00 provides the following regarding "marked" limitations in activities of daily living and social functioning:

> We do not define "marked" by a specific number of activities of daily living in which functioning is impaired, but by *the nature and overall degree of interference with function*. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.
>
> ***
>
> We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by *the nature and overall degree of interference with function*. For example, if you are highly antagonistic, uncooperative, or hostile but are tolerated by local storekeepers, we may nevertheless find that you have a marked limitation in social functioning because that behavior is not acceptable in other social contexts.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C (emphasis added).
     [5]Though plaintiff asserts that "[t]he exhibits and testimony at the [ALJ] hearing establish" that she meets the "paragraph A" criteria of Listings 12.04 and 12.06, she fails to cite to any specific testimony or evidence to support this claim.

8

(1990). Plaintiff has not identified any medical opinion evidence supporting a finding that she

meets the "paragraph B" criteria of Listings 12.04 and 12.06. Rather, she relies solely on her

ALJ hearing testimony and the non-medical opinion of her social worker. As explained further

*infra*, the ALJ's decision to discount plaintiff's testimony is supported by substantial evidence.

Moreover, the ALJ's decision to give "little weight" to Ms. Osborn-Coffey's opinion is

substantially supported by the record evidence.

Ms. Osborn-Coffey completed a mental RFC assessment form on February 1, 2012, after

only two counseling sessions with plaintiff in January 2012. (Tr. 421-23). Ms. Osborn-Coffey

opined that plaintiff was markedly limited in her ability to: remember locations and work-like

procedures; understand, remember, and carry out detailed instructions; maintain attention and

concentration for extended periods; perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; sustain an ordinary routine without

special supervision; work in coordination with or proximity to others without being distracted by

them; complete a normal work-day and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods; respond appropriately to changes in the work setting; travel in unfamiliar places

or use public transportation; and set realistic goals or make plans independently of others. (Tr.

421-22).

The ALJ gave "little weight" to these findings because: (1) as a social worker, Ms.

Osborn-Coffey is not an "acceptable medical source"; (2) the opinion is inconsistent with and

"patently unsupported by the medical evidence of record"; (3) her treatment history with plaintiff

was brief; and (4) her opinion relied heavily on plaintiff's subjective statements which he

9

deemed less than fully credible. (Tr. 43). The ALJ's decision to discount Ms. Osborn-Coffey's opinion is substantially supported by the evidence of record.

First, the ALJ was not required to give any special credence to Ms. Osborn-Coffey's opinion because social workers are not "acceptable medicals sources." Only "acceptable medical sources" as defined under 20 C.F.R. § 404.1513(a) and § 416.913(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.[6] Given her status as a social worker, it was appropriate for the ALJ to give "little weight" to Ms. Osborn-Coffey's opinion regarding plaintiff's functional abilities.

Second, the ALJ was permitted to discount Ms. Osborn-Coffey's findings given the brevity of her treatment relationship with plaintiff at the time she rendered her opinion. Information from "other sources" such as social workers "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id. See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p.

---

[6]SSR 06-03p provides that the Commissioner will consider all available evidence in an individual's case record, including evidence from medical sources. The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1502 and § 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)). Licensed social workers are not "acceptable medical sources" and instead fall into the category of "other sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)).

Ms. Osborn-Coffey completed her mental RFC assessment form after having only two counseling sessions with plaintiff. *See* Tr. 423. In light of plaintiff's minimal treatment with Ms. Osborn-Coffey, the ALJ was permitted to give her opinion "little weight." *See Smith-Marker v. Astrue*, 839 F. Supp.2d 974, 982 (S.D. Ohio 2012) (ALJ's decision to discount the opinion of treating social worker was substantially supported where plaintiff only attended four counseling sessions prior to social worker's opinion being rendered).

Third, Ms. Osborn-Coffey's opinion that plaintiff has a variety of "marked limitations" due to her severe depression and anxiety is inconsistent with other substantial record evidence, including the medical opinions of record, plaintiff's counseling treatment notes, and plaintiff's Global Assessment of Functioning Scores (GAF).[7] Consultative examining psychologist Dale E. Seifert, MS, ED, examined plaintiff in November 2009 and determined that she had mild limitations in her ability to relate to others, to understand and follow instructions, and to maintain attention to perform simple, repetitive tasks. (Tr. 303). Dr. Seifert also found that plaintiff was moderately limited in her ability to withstand the stress and pressures of daily work activity due to her depression and anxiety. (*Id.*). Dr. Seifert assigned plaintiff a GAF score of 63, indicating mild symptoms. (*Id.*). State agency reviewing psychologist Cynthia Waggoner, Psy.D., reviewed the record in February 2010 and opined that plaintiff had mild limitation in activities of

---

[7] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with scores of 61 to 70 are identified as having some mild symptoms, such as a depressed mood and mild insomnia, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and able to have meaningful interpersonal relationships. *Id.* Individuals with scores of 51 to 60 are identified as having moderate symptoms, including flat affect and occasional panic attacks, or moderate difficulty in social, occupation, or school functioning, such as having few friends or conflicts with peers or co-workers. *Id.*

daily living; mild limitation in maintaining social functioning; moderate limitation in maintaining

concentration, persistence, or pace; and no episodes of decompensation. *See* Tr. 336. In May

2010, Dr. Waggoner's findings were affirmed by state agency reviewing psychologist Katherine

Lewis, Psy.D. (Tr. 347).

Treatment notes from plaintiff's mental health providers include GAF scores of 52 and 56

from February through June 2011 (Tr. 426, 433, 437, 440, 444, 447, 454), indicating moderate

symptoms. Given the consistency in the medical opinions of record that plaintiff's depression

and anxiety caused no more than moderate functional limitations and the correlating GAF scores,

it was appropriate for the ALJ to discount Ms. Osborn-Coffey's findings of "marked limitations"

and give greater weight to the findings of Drs. Seifert, Waggoner, and Lewis. Further, because

these doctors are "acceptable medical sources" specializing in mental health treatment, the ALJ

was entitled to credit their medical findings over those of plaintiff's social worker. *See* 20

C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Fourth, Ms. Osborn-Coffey's opinion is based solely on plaintiff's subjective complaints and not

on objective or clinical findings. *See* Tr. 423 (when asked to explain her conclusions regarding

plaintiff's functional limitations, Ms. Osborn-Coffey reported that her opinion was based on plaintiff's

responses as opposed to any clinical findings). The ALJ is not required to accept opinions from mental

health providers based solely on an individual's subjective complaints and that are not supported by

clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010).

Moreover, it was appropriate for the ALJ to give greater weight to the opinions of Drs. Seifert,

Waggoner, and Lewis, as their findings were based on the results of a clinical examination and mental

health testing, and not solely plaintiff's subjective statements. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4),

416.927(c)(3)-(4) (opinions that are supported by medical signs and laboratory findings are generally due more weight and "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). For these reasons, the ALJ's decision to discount Ms. Osborn-Coffey's findings is supported by substantial evidence of record.

In any event, even if the ALJ should have given greater weight to Ms. Osborn-Coffey's opinion, her opinion does not support a finding that plaintiff meets or medically equals Listing 12.04 or 12.06. As stated above, plaintiff must put forth evidence establishing that she satisfies *both* the "paragraph A" and "paragraph B" criteria of the listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Ms. Osborn-Coffey's opinion does not address the "paragraph A" criteria of the listings whatsoever. Further, though plaintiff appears to argue that Ms. Osborn-Coffey found that she had "marked limitations" in activities of daily living and in social functioning, *see* Doc. 10 at 13-14, a review of her opinion does not support this interpretation. Ms. Osborn assessed plaintiff's social interactions as either "not significantly limited" or "moderately limited," and not markedly limited. (Tr. 422). She explained in the narrative portion of her opinion that plaintiff "admits that she 'can talk with anyone, I am friendly.'" (Tr. 423). In this manner, Ms. Osborn-Coffey's opinion supports the ALJ's finding that plaintiff had less than the "marked limitation" in social functioning required for Listing level severity. Further, Ms. Osborn-Coffey did not specifically opine on plaintiff's limitations in activities of daily living or determine that plaintiff had repeated episodes of decompensation. Because the social worker's opinion does not establish that plaintiff meets either the "paragraph A" or "paragraph B" criteria, plaintiff's reliance on this evidence to establish that she meets or medically equals Listing 12.04 or 12.06 is misplaced. Regardless, the ALJ's finding that

13

plaintiff does not meet or medically equal either Listing 12.04 or 12.06 is otherwise substantially supported by the evidence of record.

The ALJ's determination that plaintiff has less than "marked" limitations in activities of daily living is supported by plaintiff's testimony that she does chores such as dishes and laundry as she is able, shops for groceries with her boyfriend, plays darts, and drives. (Tr. 63-65). Plaintiff's ability to engage in these activities, even in the modified way she testified to, supports the ALJ's finding that she does not have a "marked limitation" in activities of daily living. Likewise, plaintiff and her boyfriend's testimony that she frequently socializes at a local tavern with friends and regularly visits friends and family (Tr. 63-65, 77-78) and plaintiff's report to Ms. Osborn-Coffey that she "can talk with anyone" and is "friendly" (Tr. 423) belie plaintiff's assertion that she has a "marked limitation" in social functioning and substantially support the ALJ's finding of only "mild limitation." There is no evidence in the record establishing that plaintiff has experienced any episodes of decompensation. Because the record of evidence does not establish that plaintiff has two "marked limitations" or any episodes of decompensation, plaintiff has not met her burden at Step Three of the sequential evaluation process. *See Zebley*, 493 U.S. at 530-32. Accordingly, the ALJ did not err in finding that plaintiff does not meet or equal Listings 12.04 and 12.06. Plaintiff's first assignment of error is therefore overruled.

2. Whether the ALJ erred in assessing plaintiff's RFC.

Plaintiff argues the ALJ erred in finding that she retained the RFC to perform "light work"[8] because this determination is inconsistent with her testimony, the opinions of her treating

---

[8]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work [the claimant] must have

14

physicians, and the RFC assessment completed by her physical therapist.   (Doc. 10 at 16).

Plaintiff further claims that when the ALJ determined she had certain severe impairments, the

ALJ implicitly relied on the records of plaintiff's treating physicians which document her

diagnoses and consistent reports of limiting symptoms.   (*Id.* at 16-17).   Plaintiff maintains that

"[t]he ALJ's acceptance of the medical evidence, including [her] treating physicans['] records

and opinions" is inconsistent with his finding that plaintiff is capable of "light work."   (*Id.*).

Plaintiff asserts the ALJ erred by giving reduced weight to these opinions and the ALJ should

have given greater weight to the opinion of her physical therapist.   (*Id.* at 17).

     At the outset, the Court notes that plaintiff's arguments reflect fundamental

misunderstandings of the record evidence, the ALJ's decision, and the ALJ's duty under the

Social Security regulations.   First, plaintiff appears to confuse the observations of her treating

physicians as contained in their treatment notes with medical opinion evidence.   Plaintiff does

not identify any treating physician who rendered a medical opinion on plaintiff's functional

capacity, nor does she direct the Court to any such opinion evidence in the record.   The Court's

review of the medical evidence establishes that there is no treating physician opinion in the

record.[9]   To the extent that plaintiff contends that the treatment records generated by her treating

physicians document the severity and symptoms of her conditions, these treatment records do not

qualify as "medical opinions" under the Social Security regulations and "without more, are not

the type of information from a treating physician which is entitled to great weight. . . ."   *Bass v.*

*McMahon*, 499 F.3d 506, 510 (6th Cir. 2007).   *See also Bowen*, 478 F.3d at 749 (noting that a

---

the ability to do substantially all of these activities."   20 C.F.R. §§ 404.1567(b), 416.967(b).
     [9]The record includes an unsigned, two-page form which appears to have been directed to plaintiff's treating physicians at Riverhills Healthcare.   *See* Tr. 278-80.   The only writing on the form is as follows: "For all questions please see attached notes."   (Tr. 279).

treating source's general findings are relevant, but not controlling without a specific RFC assessment).

Plaintiff argues it is inconsistent for the ALJ to find she has severe physical impairments based on the medical records but not credit her subjective reports of limitations contained in those records or to adopt the functional limitations assessed by her physical therapist. Plaintiff's argument conflates the ALJ's duty to assess "severe" impairments at Step Two of the sequential evaluation process with his duty to assess plaintiff's RFC at Step Four of the process. The Step Two severity determination is "a *de minimis* hurdle." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing cases). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability. . . ." *Id*. Thus, an individual can have a severe impairment, *i.e.*, one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work. Put another way, the existence of a severe impairment says nothing as to its limiting effects. *See id*. at 863. The limiting effects of severe impairments are assessed at Step Four of the sequential analysis and plaintiff bears the burden of proving these functional limitations. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). Because the ALJ considers different criteria in assessing the severity of impairment at Step Two and the functional limitations resulting therefrom at Step Four, plaintiff's argument that the ALJ made inconsistent findings at Steps Two and Four of the sequential evaluation process is without merit.

Plaintiff's remaining arguments regarding the ALJ's RFC finding are that: (1) the ALJ

should have adopted the functional limitations found by her physical therapist because they are consistent with the findings of her treating physicians and plaintiff's testimony; and (2) the ALJ erred by not considering the hearing testimony in determining her RFC. (Doc. 10 at 18-19). For the following reasons, the undersigned finds that the ALJ did not err in assessing plaintiff's physical RFC.

The record includes treatment notes from the Center for Physical Therapy from January 6, 2011 to February 7, 2012 (Tr. 397-409)[10] and a Functional Capacity Evaluation (FCE) form completed by plaintiff's primary therapist Karen Scholler, PT. (Tr. 410-14). The physical therapy notes include plaintiff's reports of pain in her back and lower extremities and the therapists' treatment recommendations, such as engaging in specified exercises, using pillows while laying down, and avoiding certain movements. (Tr. 399-409). However, the therapy notes include no objective examination results. In the FCE, therapist Scholler opined that plaintiff is limited in her abilities to do a variety of daily activities, such as doing laundry or cleaning (Tr. 410); plaintiff's range of motion was within normal limits throughout (Tr. 411); and plaintiff's manual muscle testing was fair to good throughout. (Tr. 411). Therapist Scholler opined that plaintiff was limited to sitting, standing, and walking for only 15 minutes at a time and could carry only five pounds occasionally. (Tr. 411). When asked how often plaintiff could sit, stand, or walk in an eight hour workday, therapist Scholler stated "0" hours. (Tr. 412).

The ALJ was not required to give any special weight to therapist Scholler's opinion because as a physical therapist, she is not an acceptable medical source who is qualified to assess the severity of plaintiff's impairments and functioning. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists,

17

licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20

C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners,

physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be

"other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of*

*Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant

weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r*,

No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same).

Because physical therapists are not considered acceptable medical sources under the regulations,

the ALJ was not required to give any special deference to therapist Scholler's opinion.

Moreover, though plaintiff contends therapist Scholler's opinion is consistent with the

findings of her treating physicians, she fails to provide any explanation supporting this argument

or citations to the purportedly consistent findings. "It is well-established that issues adverted to

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived." *Rice v. Comm'r of Soc. Sec.,* 169 F. App'x 452, 454 (6th Cir. 2006) (internal

quotations omitted). Similarly, "[i]t is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*,

125 F.3d 989, 995-96 (6th Cir. 1997); *see also Przytulski v. Astrue*, No. 1:11-cv-1518, 2012 WL

2025299, at *6 (N.D. Ohio June 5, 2012) ("The Court will not cull through the record and

speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade

through and search the entire record for some specific facts that might support a party's claims.").

Because plaintiff offers no explanation or citation to evidence demonstrating how therapist

---

[10]The record includes a partial duplicate of the physical therapy treatment records. *See* Tr. 359-64.

Scholler's opinion is consistent with the other medical evidence of record, the Court finds that she has waived this argument.

In any event, the ALJ's determination that plaintiff is capable of performing "light work" is supported by substantial evidence of record. Jennifer Wischer Bailey, M.D., conducted a consultative physical examination of plaintiff on December 14, 2009. (Tr. 305-12). The examination revealed that plaintiff had full strength in her upper and lower extremities; grasping, manipulation, pinching, and fine coordination were within normal limits; there was no muscle spasm or atrophy present; and plaintiff had normal range of motion in her cervical spine, shoulders, wrists, hands, dorsolumbar spine, hips, knees, and ankles. (Tr. 305-08). Based on these examination findings, Dr. Bailey opined that plaintiff was "capable of performing all activities commensurate with her age." (Tr. 312). On February 23, 2010, state agency reviewing physician Munazza Sattar, M.D., completed a physical RFC assessment form and found, based on Dr. Bailey's examination results and her review of the objective and clinical record evidence, that plaintiff was capable of performing "light work." (Tr. 318-25). Dr. Sattar's finding was affirmed by state agency reviewing physician W. Jerry McCloud, M.D., on June 3, 2010. (Tr. 348-49). Because there is no medical opinion from an acceptable medical source in the record that contradicts these opinions, the ALJ was entitled to rely on them in formulating plaintiff's RFC. As plaintiff cites to no medical evidence establishing that she has greater functional limitations than those found by the ALJ, the ALJ's determination that she is capable of "light work" is substantially supported and plaintiff's second assignment of error is overruled.[11]

---

[11]Insofar as plaintiff contends the ALJ should have given greater consideration to her subjective statements in assessing her RFC, the Court finds no error on this score because, as discussed further *infra*, the ALJ's decision to

19

3. <u>Whether the ALJ erroneously discounted plaintiff's credibility</u>.

Plaintiff asserts that the ALJ erred by accepting some, but not all of plaintiff's allegations of pain and limitations in making his RFC finding. For example, the ALJ gave plaintiff the benefit of the doubt and accepted her subjective complaints when he restricted her ability to work around extreme heat or cold and hazards (unprotected heights or dangerous machinery). (Tr. 42). Yet, the ALJ discounted plaintiff's allegations to the extent they would preclude all work activity. (Tr. 43). Essentially, plaintiff asserts that the ALJ was required to accept her subjective statements in their entirety or not at all, and that the ALJ committed reversible error by crediting only portions of her statements. Plaintiff cites to no authority supporting the proposition that ALJs must take an "all or nothing" approach in assessing credibility. Further, it is common for ALJs to credit some portions of a claimant's subjective statements while rejecting others for various reasons and this practice, in and of itself, is not erroneous. Because plaintiff has provided no legal support for her position, the Court declines to find that the ALJ erred by employing the common practice of crediting plaintiff's statements in part. Nevertheless, the undersigned finds that the ALJ's decision to discount plaintiff's credibility is supported by substantial evidence.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's

_____

not credit plaintiff's statements is supported by substantial evidence.

20

testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Here, the ALJ reasonably determined that plaintiff's statements as to the severity of her symptoms were not fully credible because: (1) other record evidence does not support and is inconsistent with her statements; (2) the conservative nature and lack of treatment is inconsistent with her reports of disabling symptoms; and (3) the record establishes that plaintiff put forth less than maximal effort during a neuropsychological evaluation. (Tr. 40-41). As the ALJ noted, plaintiff participated with friends in a darts league and socialized with them on a weekly basis at a local tavern and that such activities are inconsistent with her reports of being severely limited in her activities of daily living. (Tr. 40, citing Tr. 64). Further, the ALJ reasonably noted that

the objective medical evidence did not support plaintiff's claims as x-rays and MRIs of plaintiff's spine showed only mild to moderate degenerative changes and disc disease with no evidence of fracture, subluxation, or cord signal abnormality of the lumbar spine. (Tr. 41, citing Tr. 276, 385-92). Regarding plaintiff's neuropsychological testing, the ALJ cited to a May 2011 neuropsychological evaluation report completed by George B. Jewell, Ph.D. (Tr. 41, citing Tr. 416-19). Plaintiff was referred to Dr. Jewell by her treating doctor for an evaluation based on plaintiff's complaints of short term memory problems. (Tr. 416). Plaintiff performed various tests, including "a forced choice recognition memory task designed to assess test taking effort." (Tr. 417). Dr. Jewell opined that plaintiff's performance on this test was "at a level strongly suggestive of having put forth a suboptimal degree of effort. Other embedded measures of test taking effort were examined, and these also suggested limited test taking effort." (*Id.*). Thus, while plaintiff performed poorly on some of the tests, Dr. Jewell stated that the "test data should be viewed with considerable caution as it very likely under-represents [plaintiff]'s actual level of cognitive ability." (Tr. 418).[12]

The above-cited evidence substantially supports the ALJ's decision to not fully credit plaintiff's subjective statements regarding the limiting effects of her impairments. It is appropriate for an ALJ to give less credence to a claimant's subjective statements where they are inconsistent with established activities of daily living and objective medical evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997) (ALJ may discount plaintiff's statements of disabling symptoms where record lacks objective, physical, or clinical

---

[12]The ALJ cited to other evidence supporting his credibility decision. *See generally* Tr. 40-43. The Court declines to address each item discussed by the ALJ because the evidence cited above, taken alone, substantially supports the ALJ's credibility determination and plaintiff has not put forth any specific argument challenging the ALJ's reliance on this evidence in assessing her credibility.

22

evidence of disabling severity and statements are inconsistent with activities of daily living).

Moreover, where an examining doctor indicates that a patient has not put forth complete effort on

testing, an ALJ is entitled to discount the claimant's statements. *See Hull-Kitchen v. Astrue*, No.

3:11-cv-423, 2013 WL 423278, at *10 (S.D. Ohio Feb. 1, 2013) (Report and Recommendation),

*adopted*, 2013 WL 792920 (S.D. Ohio Mar. 4, 2013) (ALJ was permitted to rely on evidence

showing plaintiff's suboptimal effort on medical tests in discounting credibility). The

undersigned finds that the ALJ's decision to discount plaintiff's credibility because, *inter alia*,

her subjective statements are inconsistent with and unsupported by other record evidence and

because she put forth suboptimal effort on neuropsychological testing is supported by substantial

evidence. Accordingly, plaintiff's third assignment of error is overruled.

> 4. Whether the ALJ erred in weighing the medical opinions of record.

As stated above, plaintiff's Statement of Errors enumerates eight distinct assignments of

error. *See* Doc. 10 at 2-3. The Statement of Errors includes a fourth assignment of error

wherein plaintiff asserts the ALJ erred:

> In discounting the evidentiary significance of [plaintiff]'s treating physicians,
> psychologist [and] physical therapist by giving their opinions and conclusion
> 'little weight,' while at the same time giving 'significant' and 'great weight' to
> 'consulting physicians,' psychologists, [and] the DDS physician and psychologist.
> (404 CFR 1527).

(*Id*. at 2). However, there is no argument section in the Statement of Errors corresponding to

this enumerated error. Plaintiff's failure to develop any argument relating to her fourth

enumerated assignment of error amounts to a waiver. *See Rice*, 169 F. App'x at 454;

*McPherson*, 125 F.3d at 995-96; *Przytulski*, 2012 WL 2025299, at *6. Plaintiff's fourth

assignment of error is therefore overruled.

> 5. Whether the ALJ erred in determining that plaintiff could perform her past relevant work.

23

The entirety of plaintiff's argument in support of her fifth assignment of error is as follows:

> The ALJ, in finding six of his opinion (Tr. 43) found that [plaintiff] could return to and perform her past relevant work. However, the VE, in direct response to a question from the ALJ asking whether any of the past work 'would be available' for the plaintiff, testified that plaintiff *could not return* to her past work. (Tr. 81)[.] In making such a finding the ALJ directly contradicted and rejected the testimony of the VE. Thus, that finding was not supported by any evidence, much less substantial evidence, and is improper.

(Doc. 10 at 21) (emphasis in original). Plaintiff refers to the following exchange between the ALJ and the VE at the ALJ hearing:

> [ALJ]: Let me ask you a hypothetical question. I would like you to assume an individual with the [plaintiff]'s age, education and past work experience. I'd like you to assume that this individual is capable of performing light work as defined in the regulations, is capable of lifting 20 pounds occasionally, 10 pounds frequently, standing/walking six of eight hours, sitting two of eight hours. This individual should not climb ladders, ropes, or scaffolds and the work should not involve climbing ramps or stars. Avoid concentrated exposure to wetness, humidity, extreme heat or cold and pulmonary irritants. No work with hazards, unprotected heights or dangerous machinery. The work should be simple and - - the individual is capable of performing *simple and some detailed tasks*, but no fast paced production work. I would also exclude work involving overhead work. Based on those limitations, would any of the past work be available?
>
> [VE]: No, *because there is some detailed work that's involved in the clerk occupation*, Judge [INAUDIBLE] preclude her from returning to her past capable of (sic) work due to the fact that SVP [INAUDIBLE].

(Tr. 80-81) (emphasis added).

Despite the VE's testimony that plaintiff would be precluded from returning to her past work (Tr. 81), the ALJ found otherwise and determined that she could perform her past relevant work as a switchboard operator and clerk. (Tr. 45). The Commissioner argues that the ALJ's finding is substantially supported because the VE testified that the only reason plaintiff was

24

precluded from her past relevant work was because it required "some detailed work." (Doc. 11 at 16, citing Tr. 81). Because the ALJ found that plaintiff retained the RFC to do "simple and detailed tasks," the Commissioner contends the ALJ's finding comports with the VE's testimony and is thus substantially supported. (*Id.*, citing Tr. 38).

The Court declines to accept the Commissioner's post hoc rationalization for the ALJ's failure to secure testimony from the VE supporting his finding that plaintiff was able to perform her past relevant work. *See S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (in reviewing the decision of an administrative agency, the Court must judge the propriety of the decision solely on the grounds stated by the agency). Review of the above hearing testimony clearly establishes that the VE testified that plaintiff could not perform her past relevant work. As the relevant portion of the transcript was partially inaudible, the Court cannot conclude that the VE's testimony supports a contrary finding. The ALJ has the burden at Step Five of the sequential analysis and, here, the ALJ failed to meet his burden of establishing that plaintiff could perform her past relevant work as the VE's testimony does not support such a finding. *See Rabbers*, 582 F.3d at 652; *Harmon*, 168 F.3d at 291.

However, the ALJ continued the analysis and alternatively found that plaintiff was capable of performing other jobs in the national economy, such as cashier, office helper, and information clerk. *See* Tr. 47. The ALJ's alternative Step Five finding is substantially supported by the VE's uncontradicted testimony. *See* Tr. 81. The ALJ's error was therefore harmless. *See McKay v. Comm'r*, No. 08-14530, 2010 WL 376324, at *4 (E.D. Mich. Jan. 25, 2010) (where ALJ's finding that plaintiff can perform past relevant work is unsupported, it is harmless error where ALJ's alternative Step Five finding that plaintiff can perform other jobs is

25

supported by substantial evidence).    Accordingly, plaintiff's fifth assignment of error is

overruled.

6. Whether the ALJ erred by not accepting the hypothetical question posed to the VE by plaintiff's counsel at the ALJ hearing.

Plaintiff further challenges the ALJ's Step Five determination, asserting that the ALJ

failed to include supported limitations.    At the hearing, the ALJ posed a hypothetical question to

the VE regarding plaintiff's RFC to perform a limited range of light work.    Plaintiff contends the

ALJ erred by not including restrictions she testified to or the limitations identified by her physical

therapist that she is limited to sitting, standing, and walking for ten minutes at a time.    (Doc. 10

at 21-22).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to

identify a significant number of jobs in the economy that accommodate the claimant's residual

functional capacity (determined at step four) and vocational profile."    *Jones v. Comm'r of Soc.*

*Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).    The Commissioner may meet this burden through

reliance on a vocational expert's testimony in response to a hypothetical question.    To constitute

substantial evidence in support of the Commissioner's burden, the hypothetical question posed to

the vocational expert must accurately reflect the claimant's physical and mental limitations.    *See*

*Ealy v. Comm'r of Soc. Sec.* 594 F.3d 504, 516 (6th Cir. 2010).

Plaintiff's argument is essentially a repeat of her challenge to the ALJ's RFC and

credibility findings.    The Court will not revisit plaintiff's reiterated arguments in light of the

Court's determination that the ALJ's RFC and credibility findings are supported by substantial

evidence.    Notably, though plaintiff contends the ALJ failed to consider her physical therapist's

assessment in compliance with Social Security Ruling 06-03p, review of the ALJ's decision

establishes that he considered this opinion but rejected the proffered limitations because they were not supported by the objective evidence.  *See* Tr. 43-44.  As stated above, the ALJ's decision to discount the physical therapist's opinion is substantially supported, as is his RFC determination.  To the extent plaintiff asserts her subjective statements support a finding of additional limitations, as discussed above, the ALJ's finding that plaintiff is not fully credible is substantially supported by the record.  Accordingly, the undersigned finds that the ALJ included appropriate limitations in the hypothetical question to the VE given the evidence of record. Plaintiff's sixth assignment of error is therefore overruled.

     7.  <u>Whether the ALJ improperly considered plaintiff's subjective complaints of pain</u>.

     Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ."  42 U.S.C. § 423(d)(5)(A).  Subjective complaints are evaluated under the standard set forth in *Duncan v. Sec'y of H.H.S.*, 801 F.2d at 852-53.  In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition.  *Id*. at 853.  If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain.  *Id*.

     In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors.  *Felisky*, 35 F.3d at 1040.  Additional specific factors relevant to the plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her pain or

27

other symptoms; treatment other than medication plaintiff has received for relief of her pain; and

any measures the plaintiff uses to relieve her pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c),

416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself"

in order to establish that she is disabled, *Duncan,* 801 F.2d. at 853, statements about her pain or

other symptoms are not sufficient to prove her disability. 20 C.F.R. §§ 404.1529(a), 416.929(a).

The record must include "medical signs and laboratory findings which show that [plaintiff has] a

medical impairment(s) which could reasonably be expected to produce the pain or other

symptoms alleged and which, when considered with all of the other evidence . . . would lead to a

conclusion that [plaintiff is] disabled." *Id*.

      Plaintiff argues the ALJ erred by failing to properly assess the disabling effect of her pain.

Plaintiff contends the ALJ failed to adhere to the standard for evaluating subjective complaints of

pain enunciated in *Duncan*. Plaintiff further contends that because the Sixth Circuit has held in

*Duncan* and its progeny that pain alone can be disabling, "there was no need to assess [her]

credibility and it was error to do so." (Doc. 10 at 15). Plaintiff states that the existence of her

severe impairments "in and of itself [shows] that the pain is such that it alone imposes significant

limitations" on plaintiff. (*Id*.). Plaintiff supports her claim of disabling pain by citing to her

physical therapist's opinion that she would have difficulty maintaining employment due to pain.

(Doc. 10 at 16). For the following reasons, plaintiff's arguments are not well-taken.

      First, plaintiff's assertion that it was error for the ALJ to even assess plaintiff's credibility

(Doc. 10 at 15) is without any legal support and contravenes Sixth Circuit precedent. As best

the Court can discern, plaintiff appears to argue that because the ALJ determined she suffered

from severe impairments, this established that plaintiff had severe pain as she alleges and,

consequently, the ALJ should have ended his inquiry at Step Two and found her disabled.

Plaintiff again misapprehends the distinction between a severe impairment and a disabling one.

As stated *supra*, the fact that plaintiff suffers from severe impairments demonstrates only that

these impairments have more than a minimal effect on her ability to work. *See Higgs*, 880 F.2d

at 862. Once a severe impairment is found, plaintiff must still put forth evidence showing the

degree of limitation resulting therefrom as the mere existence of a severe impairment says

nothing about the resulting functional limitations. The ALJ is therefore *required* to consider,

among other things, a claimant's credibility in assessing whether they are disabled on the basis of

pain. *See Duncan*, 801 F.2d at 852 ("determinations of credibility related to subjective

complaints of pain rest with the ALJ"); *Kirk*, 667 F.2d at 538 ("credibility, especially with

alleged pain, is crucial to resolution of the claim"). In light of the Sixth Circuit's repeated

determinations that an ALJ's credibility finding is of the utmost import in assessing claims of

disabling pain, the undersigned finds no merit in plaintiff's argument that the ALJ erred by

weighing her credibility.

Second, to the extent plaintiff contends the ALJ should have found her disabled under

*Duncan* because she had severe impairments and the record evidence confirms the severity of

plaintiff's pain or because the underlying impairments are severe enough that her allegations are

credible, plaintiff cites to no evidence in the record which supports this conclusion. The only

evidence plaintiff cites to is the opinion of her physical therapist. The Court has already

determined that the ALJ was entitled to discount this opinion because it is not an "acceptable

medical source opinion." Further, the therapist's opinion is inconsistent with the acceptable

medical source opinions of record and the objective and clinical evidence of record. Thus, this evidence does not suffice to show that plaintiff suffers from disabling pain.

The ALJ here conducted a thorough evaluation of plaintiff's complaints of pain and other disabling symptoms in light of the objective, clinical, and opinion evidence of record. *See* Tr. 40-43. This evidence simply does not establish that plaintiff's impairments could reasonably be expected to produce the disabling pain she alleges. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Moreover, the ALJ's decision to find plaintiff's complaints of disabling pain less than fully credible is substantially supported by the record evidence.

Accordingly, plaintiff's seventh assignment of error is overruled.

8. Whether the ALJ improperly applied the Medical-Vocational Guidelines.

Plaintiff's final assignment of error is a challenge to the ALJ's alternative Step Five finding that plaintiff retains the ability to perform work as a cashier, office helper, and information clerk. Plaintiff contends the alternative finding is not substantially supported because the hypothetical question posed to the VE by the ALJ did not include all of plaintiff's supported limitations. (Doc. 10 at 20).

Similar to plaintiff's sixth assignment of error, this argument is simply a rehash of plaintiff's challenge to the ALJ's RFC determination, but directed specifically at the ALJ's alternative Step Five finding. Accordingly, the Court incorporates its rationale stated above and finds that the ALJ did not err in his Step Five finding because his RFC finding is substantially supported and the hypothetical question posed to the VE incorporated all of plaintiff's supported limitations. Plaintiff's eighth and final assignment of error is therefore overruled.[13]

---

[13]In connection with this argument, plaintiff asserts "the ALJ improperly rejected [her] treating physician's Mental Residual Functional Capacity Assessment and the limitations set forth therein. . . ." (Doc. 10 at 20). The

## III.  Conclusion

For the reasons stated above, the Commissioner's decision that plaintiff is not disabled and therefore not entitled to benefits is **AFFIRMED** and this case is **TERMINATED** on the docket of the Court.

**IT IS SO ORDERED.**

Date: _8/5/14_

Karen L. Litkovitz
United States Magistrate Judge

---

record does not include any opinion evidence from a treating physician.   To the extent plaintiff's argument relates to the ALJ's decision to discount the opinion of her social worker, as stated above in connection with plaintiff's first assignment of error, the ALJ's decision in this regard is supported by substantial evidence.